**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **D.R. and N.R.** | : | |
| *INDIVIDUALLY AND AS* | : | |
| *PARENTS AND NATURAL GUARDIANS* | : | |
| *OF C.R. (A MINOR*) | : | |
| | : | **CIVIL ACTION NO. 23-4907** |
| **v.** | : | |
| | : | |
| **DOWNINGTOWN AREA** | : | |
| **SCHOOL DISTRICT, ET AL.** | : | |

---

**McHUGH, J.**                                                             **July 8, 2024**

## MEMORANDUM

      This is a civil rights case brought by parents of a child who faces challenges by virtue of ADHD, anxiety, and serious behavioral regulation issues. While in kindergarten, teachers and staff found it necessary to use restraints in response to certain outbursts, and plaintiffs challenge their use as a violation of their child's Fourteenth Amendment rights and under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. Plaintiffs also bring three state law claims.

      Plaintiffs seek leave to file a Second Amended Complaint in the face of Defendants' Motion to Dismiss their First Amended Complaint.[1] For the reasons that follow, Defendants' Motion to Dismiss will be granted and Plaintiffs' Motion for Leave to Amend denied.

---

[1] Defendants moved to dismiss the original complaint, which Plaintiffs rendered moot by filing a first amended complaint as a matter of right. Plaintiffs now seek to amend again in response to a renewed motion to dismiss.

## I.    Relevant Background

### A.  Facts as Pleaded[2]

Plaintiffs D.R. and N.R., individually and on behalf of their child C.R., bring this suit against Defendants Downingtown Area School District and several staff members at C.R.'s elementary school, including the principal (Deborah Kearney), learning support teacher (Laura Smyth), and paraprofessional (Valerie Poole).[3] Am. Compl. ¶¶ 1-11, ECF 7.  C.R. was diagnosed with ADHD and anxiety at an early age, causing a "pattern of behavior outbursts and poor emotional regulation." *Id.* ¶¶ 19-20.  When C.R. started kindergarten in the School District in Fall 2022, she was qualified for special education services, but the District allegedly did not provide C.R. with an "appropriate Individualized Education Program (IEP) and Positive Behavior Support Plan (PBSP)." *Id.* ¶¶ 21-22, 25.

The core of Plaintiffs' complaints are allegations of recurrent "child abuse by the School District, who repeatedly used unlawful means of restraint in reaction to C.R.'s behavioral episodes and deprived her of her constitutional liberties." *Id.* ¶ 27.  Specifically, Plaintiffs plead that "[o]n at least four separate occasions, C.R. was restrained for over twenty minutes, with the School District's staff utilizing objects like bean bag chairs and gym mats as makeshift, unapproved restraints."[4] *Id.* ¶ 29.  Plaintiffs address in detail a specific instance on October 10, 2022, which

---

[2] The factual pleadings are based on the allegations from the First Amended Complaint, which is subject to the pending Motion to Dismiss.  Because there is a pending Motion to Amend, where relevant I address discrepancies between the First Amended Complaint and the proposed Second Amended Complaint.

[3] Plaintiffs' proposed Second Amended Complaint would add two additional school staff members, a prevention specialist (Karen Giannone) and a behavioral specialist (Laura Creek). Sec. Am. Compl. ¶¶ 13-16, Mot. to Amend Ex. A, ECF 11.

[4] Plaintiffs' proposed Second Amended Complaint seeks to expand this language to indicate five instances of the use of restraints for over twenty-five minutes. Sec. Am. Compl. ¶ 33.

was reported to Child Protective Services (CPS) by C.R.'s privately hired behavioral aide.[5]  *Id.* ¶

44.  As pleaded, C.R. was purportedly upset but not aggressive, and District staff told her that she

had to take a break and then "grabbed both of her arms and escorted C.R. out of the room."  *Id.* ¶¶

31-32.  Afraid of being restrained again, C.R. threw a tissue box, which led Defendants Kearney,

Poole, and Smyth to use a gym mat to "pin C.R. against the wall" for "over 25 minutes."[6]  *Id.* ¶¶

34-35.  Plaintiffs plead that C.R.'s parents were never informed of the use of restraints or approved

their use.  *Id.* ¶ 54.  As a result of the incidents of restraint, C.R. developed "separation anxiety,

Acute Stress Disorder and Post-Traumatic Stress Disorder."[7]  *Id.* ¶ 67.

After C.R.'s private behavioral aid reported the October 10, 2022, incident to CPS,

Plaintiffs claim that CPS investigated and concluded on November 27, 2023, that "abuse was

'indicated'", further pleading that "the Agency determined that C.R. was abused."[8]  *Id.* ¶¶ 45-47.

Plaintiffs then argue that "the School District attempted to cover up the outrageous behavior," but

do not provide any factual details in either complaint specifying how the District attempted a

---

[5] Plaintiffs' proposed amended complaint includes details about four additional instances of District staff using inappropriate restraints.  Specifically, Plaintiffs would plead that on September 16, September 19, and October 4, Defendants Kearney, Giannone, and Poole pinned C.R. to a wall with either a bean bag or a gym mat.  Sec. Am. Compl. ¶¶ 34-37, 40-41.  On the October 4 incident, the proposed complaint also alleges that these Defendants used "some form of restraint to 'wrap her legs.'"  *Id.* ¶ 40.  And Plaintiffs would allege that on September 27, Defendants Kearney, Giannone, and Creek restrained C.R. with a beanbag chair for "upwards of 25 minutes."  *Id.* ¶¶ 38-39.

[6] Plaintiffs' proposed Second Amended Complaint updates this language to include the involvement of Ms. Giannone.  Sec. Am. Compl. ¶¶ 45-47.

[7] Plaintiffs' proposed Second Amended Complaint includes that "C.R. also suffered physical cuts and bruises from being restrained."  Sec. Am. Compl. ¶ 82.

[8] Notably, these allegations about the CPS investigation were removed from the proposed Second Amended Complaint.  During oral argument, Defendants maintained that they received a letter from CPS saying their staff members were not found liable for any abuse, whereas Plaintiffs maintained that the CPS investigation led to a finding of abuse.  This discrepancy, and the import of the CPS investigation, are discussed below.

"cover up." *Id.* ¶ 48.  After the abuse incidents, Plaintiffs argue that the District retaliated against C.R. by "unilaterally placing her in the 'Bridges Program', a program that was far too restrictive and inappropriate for C.R.'s needs and isolated her from the general education classroom." *Id.* ¶ 63.  Plaintiffs also filed a due process complaint with the Pennsylvania Office of Dispute Resolution to address the alleged harm, which was later withdrawn.  *Id.* ¶ 64; Pls.' Summary of Admin. Proc., ECF 19.

Plaintiffs' First Amended Complaint alleges seven counts.  The first two counts are against the District for violations of the Fourteenth Amendment, brought under 42 U.S.C. § 1983, for state created harm and failure to train or supervise.  *Id.* ¶¶ 68-89.  Plaintiffs also allege the District violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.  *Id.* at ¶¶ 90-110.  Finally, Plaintiffs bring three state law claims against the individual defendants for assault and battery, intentional infliction of emotional distress, and breach of fiduciary duty.  *Id.* at ¶¶ 111-34.

### B. Procedural Background

Defendants motion relies partly on issue preclusion arising out of proceedings before the Pennsylvania Office of Dispute Resolution (ODR).  *See* Mot. Dismiss 5-6, ECF 9.  Because of disputes between the parties as to the scope and legal significance of those proceedings, I ordered them to clarify whether there were other pending, related claims.  ECF 14.  Following oral

4

argument, I instructed defense counsel to submit the full record from the underlying state proceedings in this case. [9]

   *1. Pennsylvania Office of Dispute Resolution Due Process Claims*

   In June 2023, before Plaintiffs filed this case, through counsel they filed a Complaint with the Pennsylvania Office of Dispute Resolution (ODR), ODR No. 28241-22-23. *See* Pls.' Suppl. Opp. Br., ECF 28 at 6. The ODR due process complaint was largely founded on the same factual premise as this action but named only Downingtown Area School District and focused on the District's alleged failure to provide C.R. with a Free Appropriate Public Education (FAPE). *Id.* at 7. Before their ODR complaint proceeded to a hearing, D.R. and N.R. discontinued the action, opting instead to pursue this case under a different theory of liability. *Id.*

   Separately, in September 2023, while Plaintiffs' ODR case was pending, the District filed its own ODR due process complaint seeking an expedited hearing on whether C.R. could be removed from her first-grade class and placed in an alternative education setting due to persistent challenges with her behavioral regulation. Pls.' Suppl. Opp. Br., Ex. 6; ODR No. 28527-23-24KE. The expedited hearing culminated in a final decision and order from a Pennsylvania Special Education Hearing Officer, granting the District's request to remove C.R. from her class temporarily because the Officer found that maintaining her placement would be "substantially

---

[9] In deciding a motion to dismiss, the Court may only consider allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents. *Id.* In this case, both parties cite to the ODR administrative record and findings from Pennsylvania CPS. As to the ODR record, as discussed more fully below, I consider it relevant only as to facts Plaintiffs fully litigated, and then only for purposes of evaluating the plausibility of Plaintiffs' claims. I consider the CPS investigation because Plaintiffs cite it in the Complaint at issue here and relied upon it in oral argument as support for the plausibility of their claims. *See* Am. Compl. ¶¶ 45-47.

likely to result in injury to the Student or to others." ODR Final Decision 21, Mot. Dismiss Ex.

A. Plaintiffs were represented by counsel in that proceeding. The ODR Final Decision made

factual findings describing C.R.'s behavior in kindergarten and first grade, as well as the school's

response to it. *Id.* at 4-15. But the specific scope of the ODR hearing was to determine whether

C.R.'s behavior in first grade was likely to result in injury to herself or others and thus, whether

the District's recommendation to temporarily remove her from the classroom was appropriate. *Id.*

at 3.

2. *Child Protective Services Investigation*

During oral argument, Plaintiffs maintained that the findings of the CPS investigation into

the October 10th incident supported their contention that the conduct of school employees should

'shock the conscience.' As support of this contention, Plaintiffs provided a letter dated November

2023 from the Pennsylvania Department of Human Services (DHS). *See* DHS Abuse Indicated

Letter, ECF 20-1. At oral argument, Defendants represented that, to the contrary, DHS did not

find abuse, providing a December 2022 letter from the agency concluding that the result of the

investigation was that a claim of abuse was "unfounded." *See* DHS Unfounded Letter, ECF 32-1.

This led plaintiffs to seek clarification from DHS. DHS confirmed that its investigation had

concluded and explained its conclusions as follows:

> In order to establish child abuse via Serious Mental Injury, the [Child Protective
> Services Law] requires substantial evidence of intentional, knowing, or reckless
> conduct that caused or substantially contributed to serious mental injury to a child
> through any act or failure to act or a series of such acts or failure to acts.
> . . .
> Moreover, at a minimum, the [Office of Children, Youth, and Families] must have
> evidence to conclude that the perpetrator(s) acted "recklessly" when committing
> the child abuse.
> . . .
> [T]he Department ultimately concluded that the child indeed suffered a serious
> mental injury. . . . Further, the Department concluded that the serious mental injury

6

occurred as a result of events occurring within the school setting as a "result of handling her behavior at school." However, the investigation determined that there was insufficient evidence to specifically tie intentional, knowing, or reckless conduct to a particular person or persons in relation to the child's serious mental injury.

Pls.' Suppl. Opp. Br. Ex. 3, ECF 28-3 (DHS Resp. Letter).

In short, DHS determined that the incident was traumatic for C.R., but not the result of conduct by staff that was "intentional, knowing, or reckless."

## II.     Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

For motions to amend after a complaint has already been amended as of right, the plaintiff needs either leave of court or consent from the opposing party. Fed. R. Civ. P. 15(a). The Federal Rules of Civil Procedure require that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has instructed, however, that a district court may deny a motion to amend when allowing the amendment would be futile. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In assessing futility, the court "applies the same standard of legal sufficiency as applie[d] under Rule 12(b)(6)." *Id.* "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

7

III.     **Discussion**

A.  **Preclusive Effect of the Underlying ODR Final Decision**

As a threshold matter, Defendants argue that the findings of fact from the ODR Final Hearing have preclusive effect on this case under the doctrine of collateral estoppel.[10]  Mot. Dismiss 5-6; Defs.' Mot. Dismiss Suppl. Resp. 3-5, ECF 32.  Plaintiffs argue that the ODR Final Hearing should not be considered in this case because the issues in the administrative hearing were separate from the claims they seek to litigate here.  Pls.' Resp. in Opp., ECF 13 at 7-9.

Generally, "[w]hen a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and, in section 1983 cases, apply the same preclusion rules as would the courts of that state." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).   Pennsylvania Courts apply both collateral estoppel and res judicata to agency proceedings.  *See J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 940 (Pa. Cmwlth. 2002) (citing *Grant v. GAF* Corp., 608 A.2d 1047, 1056 (Pa. 1992)) ("[W]here an agency is acting in a judicial capacity and resolves disputed issues of fact that the parties had an opportunity to fully litigate, the courts will not hesitate to apply preclusion principles.").  Where, as here, the agency ruling is unreviewed by state courts, only the findings of fact from a state administrative hearing, rather than conclusions of law, have preclusive effect.  *Edmundson,* 4 F.3d at 189 (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)).

---

[10] At times, the parties confuse res judicata with collateral estoppel.  Res judicata precludes causes of action and claims when there is (1) a final judgment on the merits, (2) the same parties are present in both actions, and (3) the "subsequent suit [is] based on the same cause of action." *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992).  The claims brought through the ODR are not the same claims before this Court, rendering res judicata inapplicable.

"[C]ollateral estoppel applies when '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'" *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).  "Moreover, 'collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case.'"  *Id.* (quoting *Allen*, 449 U.S. at 95).

The focus of the underlying ODR administrative hearing was whether C.R.'s behavior in first grade was likely to result in injury to herself or others, such that the District could remove her from the classroom temporarily.  ODR Final Decision 3; *see also* 20 U.S.C. § 1415(k)(3) (describing the standard for placement of a child with a disability in an alternative educational setting).  As part of that analysis, the Hearing Officer considered C.R.'s conduct in kindergarten. Thus, for purposes of this action, by virtue of the ODR factual findings, I conclude that Plaintiffs are bound by the fact that C.R.'s behavior was likely to endanger others or herself in a traditional classroom setting.  Defendants would have me go further, and conclude that the removal order necessarily implies a finding that the District acted appropriately in its use of restraints toward C.R.  Defs.' Mot. Dismiss Suppl. Resp. 4-5.  I decline to do so.  The Eighth Circuit precedent Defendants cite for this proposition, *Light v. Parkway C-2 School District*, is not readily applicable here because the issue in *Light* was broader, addressing what constituted a reasonable accommodation of a child's needs.  41 F.3d 1223, 1228 (8th Cir. 1994).

In summary, I apply collateral estoppel only in part, and will evaluate the plausibility of Plaintiffs' allegations of conscience-shocking behavior using the findings of the Hearing Officer regarding C.R.'s behavior as a relevant benchmark.

9

### B. Plaintiffs' Federal Law Claims Against the District

*1. Plaintiffs' Fourteenth Amendment § 1983 Claims Must be Dismissed for Failure to Shock the Conscience*

Plaintiffs bring two claims for violations of C.R.'s Fourteenth Amendment right to "personal security, bodily integrity and equal protection." [11] Am. Compl. Counts I-II, ¶¶ 69, 79. The Due Process Clause encompasses a substantive component which "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Nekrilov v. Jersey City*, 45 F.4th 662, 680 (3d Cir. 2022) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "To sustain a substantive due process claim, a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience.' The shocks-the-conscience test applies regardless of the theory upon which the substantive due process claim is premised." *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015) (citations omitted).

"While only the most egregious official conduct can shock the conscience, the level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place." *Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018) (quotations omitted). For instance, "in a hyperpressurized environment, such as a high-speed police chase, intent to harm is required. However, where deliberation is possible and officials have the time to make unhurried judgments, deliberate indifference is sufficient." *Id.* (quotations omitted). Deliberate indifference

---

[11] Plaintiffs repeatedly allude to Equal Protection, but as Defendants point out, Plaintiffs "never attempt to expand on any such claim. There is, for example, no offer of a similarly situated comparator, a necessary element . . . ." Mot. Dismiss 13 n.13; *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs . . . must demonstrate that they received different treatment from that received by other individuals similarly situated." (citation omitted)).

in this context "requires a conscious disregard of a substantial risk of serious harm." *Id.* (quotations omitted); *see also Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[T]he standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

C.R. unquestionably has a protected interest to bodily integrity: "[w]ithout doubt," the Fourteenth Amendment protects "freedom from bodily restraint." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). But Plaintiffs do not meet the high standard required to allege that the District's use of restraints 'shocks the conscience,' with the result that their § 1983 claims fail as a matter of law.[12] As a threshold matter, it bears emphasis that Pennsylvania law recognizes the need for appropriate use of restraints. Specifically, the use of restraints on students is authorized "to control acute or episodic aggressive or self-injurious behavior . . . when the student is acting in a manner as to be a clear and present danger to himself, or other students or to employees . . . ." 22 Pa. Code § 14.133(c).

At oral argument, Plaintiffs cited to the October 10th event as definitive evidence of conscience-shocking behavior, pointing to both a video and the Child Protective Services letter documenting "founded abuse." The video was considered by the Hearing Officer and has since

---

[12] It does not matter that Plaintiffs seek to add a third § 1983 claim in their Motion to Amend, since this claim is also alleging a violation of the Fourteenth Amendment's Substantive Due Process Clause for a violation of C.R.'s bodily integrity. Sec. Am. Compl. Count II, ¶¶ 103-06. As such, the same analysis would apply to defeat that claim even if permitted to amend.

been reviewed by the Court. *See* ODR Admin. Rec., ECF 29 ¶ 16. It shows staff using a relatively standard technique of holding the child to the wall with a gym mat while attempting to calm her. And the ultimate result of the CPS investigation was that the event was emotionally traumatic for C.R., but not the result of any culpable conduct by school staff. *See* DHS Resp. Letter. Even if one accepts that school staff used restraints when other methods might have sufficed, such an error in judgment would, at most, support a claim for negligence. The same would be true if restraints were employed improperly or longer than might have been necessary. Any restraint of a child is unpleasant to watch and evokes the viewer's sympathy for the child. But that emotional reaction cannot supply a basis for adjudication of constitutional rights. To find a violation of due process a court must objectively conclude that the defendants' actions represent an outrageous misuse of governmental authority. In that regard, the Court has identified no jurisdiction where use of restraints has been prohibited, and most states, like Pennsylvania, provide remedies which parents can pursue, as Plaintiffs did here.[13]

Plaintiffs' own pleading underscores the dilemma, averring that C.R. has a "pattern of behavior outbursts and poor emotional regulation." Am. Compl. ¶ 20. Plaintiffs make no allegation that Defendants intended to injure C.R. Rather, in trying to advance a *Monell* claim, they allege that the school principal provided inadequate training which resulted in improper use of restraints. But such claims amount to negligence, and even gross negligence does not suffice.[14]

---

[13] *See* Laura Kern et al., *A Review of U.S. Policy Guidance and Legislation on Restraint and Seclusion in Schools: Considerations for Improvement*, Exceptional Child: Online First, Apr. 2024, at 7-11 (providing a summary of state laws for the use of restraints).

[14] At oral argument, counsel referred to use of a beanbag for restraints, with multiple adults sitting on it. Applying a plausibility standard, neither the original nor the amended complaint pleads physical injury, and the proposed amended complaint avers minor cuts and bruises. Sec. Am. Compl. ¶ 82. The type of crushing force counsel raised in emotional fashion during oral argument, which is not pleaded in any of the complaints, would surely result in some more serious manifestation of injury.

The use of restraints on students must be approached seriously, but even if one assumes that Defendants violated C.R.'s right to a FAPE, inappropriately handled her IEP, or did not properly report or seek permission to use restraints, such statutory failures simply do not give rise to a *constitutional* violation under a "shocks the conscience" standard.  *See County of Sacramento*, 523 U.S. at 854 n.14 (noting that a failure to meet the standard for a due process claim does not "imply anything about its appropriate treatment under state law," but these decisions are best left to state courts and legislatures (citations omitted)).

### 2. *Plaintiffs' Rehab Act and ADA Claims Must be Dismissed for Failure to Adequately Plead Deliberate Indifference*

Plaintiffs additionally plead two counts against Defendant Downingtown Area School District[15] for a violation of § 504 of the Federal Rehabilitation Act (Rehab Act) and Title II of the Americans with Disabilities Act (ADA).  Am. Compl. Counts III-IV, ¶¶ 90-110.[16]

Section 504 of the Rehabilitation Act protects individuals with disabilities from discrimination under "any program or activity receiving Federal financial assistance."  29 U.S.C § 794(a).  Similarly, Title II of the ADA protects individuals with disabilities from discrimination and from being "excluded from participation in or [] denied the benefits of the services, programs, or activities of a public entity[.]"  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, Plaintiffs must prove that: "(1) they are qualified individuals; (2) with a disability; and (3) they

---

[15] Defendants argue that any claim against the individual defendants under the Rehab Act or ADA must be dismissed.  *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (finding individual defendants may not be sued under the Rehab Act) and *Randolph v. Wetzel*, 978 F. Supp. 2d 605, 617 (E.D. Pa. 2013) (Robreno, J.) (noting that other circuits have held that individuals cannot be considered a 'public entity' under the ADA).  As to these Counts, Plaintiffs removed the individual defendants in both the Amended Complaint and proposed Second Amended Complaint, rendering this argument moot.

[16] Plaintiffs' proposed Second Amended Complaint pleads the exact same Counts, but in Counts IV and V respectively.  Sec. Am. Compl. Counts IV-V, ¶¶ 118-138.

were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). "The elements of a claim under the [Rehab Act] are the same, except that the plaintiff must also show that the program in question received federal dollars." *Id.*; *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d. Cir. 2009).

When seeking compensatory damages, plaintiffs must also show "intentional discrimination under a deliberate indifference standard." *Durham*, 82 F.4th at 225. Deliberate indifference requires a showing of both "(1) *knowledge* that a federally protected right is substantially likely to be violated" and "(2) *failure to act* despite that knowledge." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). Because Plaintiffs seek compensatory damages under both the ADA and the Rehab Act, they must plausibly plead knowledge, and have not.

To properly state a claim, Plaintiffs must show "that the School District, solely because of C.R.'s disability, intentionally or with deliberate indifference allowed her plan of accommodations . . . to be implemented in a way that harmed her or failed to allow equivalent opportunity and benefit." Mot. Dismiss 19. As discussed above, Plaintiffs do not plead facts plausibly suggesting that C.R.'s accommodation plan was likely to cause her harm. Merely pleading that the District was "deliberately indifferent" without more is not sufficient to state a claim. *See* Am. Compl. ¶ 25; *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 (3d Cir. 2019). Plaintiffs must show a pattern of prior injuries, or that the risk of a constitutional violation was "so great and so obvious that the risk and the failure of supervisory officials to respond will alone support" a claim. *Haberle*, 936 F.3d at 141 (citations omitted). No such detail is supplied in any of the complaints here. For that matter, Plaintiffs' emphasis on lack of proper training supports an

14

inference that the employees themselves lacked the kind of knowledge required for them to be found deliberately indifferent to federally protected rights.   As such, Plaintiffs' claims for compensatory damages under the Rehab Act and ADA fail to state a claim and must be dismissed.

### C.   Further Amendment  is Futile

Throughout this memorandum, I have identified relevant similarities and differences between the First Amended Complaint and the proposed Second Amended Complaint.  Typically, motions to amend are freely granted unless, as in this case, it would be futile to do so because "the amendment would not cure the deficiency."  *Shane*, 213 F.3d at 115.

Here, Plaintiffs argue that they need to add two additional District staff defendants they now learned are part of the abuse – Karen Giannone and Laura Creek – and that they learned of additional episodes of abuse.  Pls.' Mot. to Amend ¶¶ 4-6, ECF 11.  Defendants oppose the Motion to Amend for several reasons, including that Plaintiffs are acting in bad faith and should have been aware of Giannone's and Creek's involvement, as well as the newly alleged incidents, based on the underlying Administrative Hearing.  Opp. to Pls.' Mot. to Amend 2-4, ECF 18.  Plaintiffs have been afforded two opportunities to plead a claim and were granted extensive oral argument.  And regardless of whether Plaintiffs should have known, adding the new incidents and new defendants would not cure the deficiencies described above.  As such, amendment would be futile and leave to amend will be denied.

### D.  Jurisdiction Over Plaintiffs' State-law Negligence Claims Against the Individual Defendants

Under 28 U.S.C. § 1367(c), a district court may decline jurisdiction where it "has dismissed all claims over which it has original jurisdiction."  In *Bright v. Westmoreland County*, the Third Circuit stated that a court "must decline to decide the pendent state claims unless considerations

of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." 443 F.3d 276, 286 (3d Cir. 2006) (quoting *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995)). This case has not proceeded beyond the pleading stage, and as reviewed above, state administrative proceedings preceded this action. The remaining issues are purely matters of state law, and the area of law in question is highly regulated through an administrative process. The Court of Appeals has cautioned that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Borough of W. Mifflin,* 45 F.3d at 788 (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)). I will therefore dismiss the state law claims without prejudice, should Plaintiffs seek to pursue them in state court.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss will be granted and Plaintiffs' Motion to Amend will be denied. An appropriate Order follows.

  /s/ Gerald Austin McHugh 
United States District Judge
